**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JEFFREY G.,**

        **Plaintiff,**

                             **Civil Action 2:21-cv-938**
    **v.**                            **Judge Edmund A. Sargus, Jr.**
                                    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jeffrey G., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his application for

Social Security Supplemental Security Income benefits ("SSI"). Pending before the Court

is Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition

(ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 9). For the

reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's

Statement of Errors and **AFFIRM** the Commissioner's non-disability decision.

### I.  BACKGROUND

Plaintiff protectively filed his application for SSI on January 28, 2019, alleging that he had

been disabled since April 16, 2001. (R. at 165-71.) Plaintiff's application was denied initially in

April 2019, and upon reconsideration in July 2019. (R. at 73-89, 90-110.) On August 17, 2020,

Plaintiff, represented by counsel, appeared and testified at a telephone hearing held by an

1

Administrative Law Judge ("ALJ").  (R. at 47-72.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On September 2, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 24-46.)  On January 4, 2021, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision.  (R. at 1-6.)  Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony as follows:

[Plaintiff] alleged that he was unable to work because of back pain, anxiety, panic disorder, agoraphobia, lumbago, and chronic pain. He testified that he continued to have back pain with radiation down his legs. He treated pain with Percocet. He was able to walk for ten-to-fifteen minutes before needing to sit. He could stand for fifteen-to-twenty minutes. Additionally, he reported panic attacks and anxiety with racing heart and sweating. Panic attacks occurred at home, and when he knew he had something coming up. Panic symptoms resolved in approximately thirty minutes with walking, breathing exercises, and medication. He also reported problems with obsessive-compulsive disorder. He reported that his medications caused headaches and drowsiness (Exhibits 1E, 5E, 7E, and testimony).

With regard to activities of daily living, [Plaintiff] testified that he lived alone in a doublewide trailer. He was married, but he and his wife were separated. He reported during a consultative evaluation that he would wake up between 10:00 and 10:30 in the morning. He did some chores, took out the trash, and picked up until his back hurt. While living with his wife, she paid the bills and did the grocery shopping.

However, he testified that he went grocery shopping and picked up his prescriptions. His wife continued to pay bills, even after moving out. He testified that he had a driver's license and drove approximately once a month. He was able to attend to personal care activities but had to sit down while shaving, secondary to back and leg pain. He listened to music, watched television, read, and got on the internet. He would also walk his property, which was a little larger than one acre. He spent most of his time at home as he did not like to be around people (Exhibit 3F/2-3 and testimony).

(R. at 32.)

III.    **MEDICAL RECORDS**

The Undersigned has thoroughly reviewed the relevant medical records and function and disability reports as to Plaintiff's conditions and resulting limitations. Instead of summarizing that information here, the Undersigned will discuss it, as necessary, below.

IV.    **ADMINISTRATIVE DECISION**

On September 2, 2020, the ALJ issued the non-disability determination. (R. at 24-46.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since January 28, 2019, the application date. (R. at 29.) The ALJ found that Plaintiff had the severe impairments of major depressive disorder, agoraphobia with panic disorder, and degenerative disc disease of the lumbar spine and facet arthropathy. (*Id.*) She further found that Plaintiff does not have an impairment or combination of impairments that

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart

P, Appendix 1. (R. at 30.)

Before proceeding to step four, the ALJ set forth Plaintiff's RFC, in pertinent part, as

follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20
> CFR 416.967(b) subject to the following limitations: lifting and/or carrying 20
> pounds occasionally and 10 pounds frequently; occasional climbing of ramps or
> stairs; never climbing ladders, ropes, or scaffolds; frequent balancing; occasional
> stooping, crouching, and crawling; never working at unprotected heights or around
> dangerous machinery; never operating a commercial vehicle; can perform one-to-
> three step, simple, routine tasks but not at a fast production rate pace and no strict
> production quotas; can interact with coworkers but no tandem or shared tasks; no
> duties requiring the individual to engage in conflict resolution or persuading others;
> occasional interaction with supervisors but no over-the-shoulder supervision; no
> direct interaction with the general public; and can adapt to a relatively static work
> environment without frequent changes in job duties.

(R. at 31.)

At step four, the ALJ determined that Plaintiff has no past relevant work. (R. at 40.) At

step five, considering Plaintiff's age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that he can

perform, such as a labeler, routing clerk, or tacking machine tender. (R. at 40-41.) The ALJ

therefore concluded that Plaintiff was not disabled under the Social Security Act since January 28,

2019. (R. at 41.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

4

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff raises two issues in his statement of errors. First, Plaintiff asserts that the ALJ failed to classify certain diagnosed conditions including chronic pain, radicular pain,

hypertension, and mixed obsessional thoughts as either severe or not severe medically

determinable impairments, and thus, did not consider them at all when constructing the residual

functional capacity.  (ECF No. 12 at 8-10.)  Further, Plaintiff contends that, under *Seila Law LLC

v. CFPB*, 591 U.S. --, 140 S.Ct. 2183 (June 20, 2020), the Social Security Administration's

structure is unconstitutional as it violates the separation of powers doctrine. (*Id.* at 13-17.)  The

Undersigned will consider Plaintiff's alleged errors in reverse order and, as explained below,

concludes that Plaintiff's arguments are not well taken.

### A.  Separation of Powers

Plaintiff asserts that remand is required because a statute that provided tenure protection to

the former Commissioner of Social Security Andrew Saul violated the separation of powers

doctrine.  He contends, therefore, that the decision to deny him benefits was made by individuals

who lacked a proper delegation of power to make a benefits determination. The Undersigned

finds no merit to this Constitutional claim.

As a preliminary matter, Plaintiff's claim, in the manner he has raised it here, is

procedurally improper. *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683,

at *6 (S.D. Ohio Dec. 21, 2021); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL

5917130, at *7 (S.D. Ohio Dec. 14, 2021). This is so because Rule 8(a)(2) of the Federal Rules

of Civil Procedure provides that a complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." Although a complaint need not provide

"detailed factual allegations," it "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550

6

U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what

the. . . claim is and the grounds upon which it rests." *Id*. Here, the United States Supreme Court

case upon which Plaintiff bases his Constitutional claim was decided on June 20, 2020.

Plaintiff, however, gave no notice, let alone fair notice, of this claim in his complaint filed on

March 5, 2021. (ECF No. 1.) *Butcher,* 2021 WL 6033683, at *6 (citing *John R. v Comm'r*

*of Soc. Sec*., Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021)

(finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers

claim in complaint seeking judicial review of Commissioner's decision to deny benefits);

*Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18,

2021) (same)).  For this reason, Plaintiff failed to comply with Rule 8.

      Beyond this procedural deficiency, Plaintiff's Constitutional claim fails on a substantive

basis as well. Plaintiff, relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct.

2183 (2020), contends that former-Commissioner Andrew Saul's appointment violated the

principle of separation of powers because 42 U.S.C. § 902(a)(3) provides for a six-year term and

makes the Commissioner removable only upon a finding of neglect of duty or malfeasance in

office. (ECF No. 12 at 10-11.)  Accordingly, Plaintiff argues that the Commissioner had no

authority to carry out any functions of his office and, by extension, the ALJ had no authority to

adjudicate Plaintiff's applications, necessitating a remand.  In response, the Commissioner

concedes that § 902(a)(3) violates the principle of separation of powers. (ECF No. 18 at 2-3 "The

parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is

construed as limiting the President's authority to remove the Commissioner without cause.")

The parties' agreement on this issue, however, is not dispositive.

Plaintiff asserts that because the removal provision is unconstitutional, any delegations of power by former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined his benefits claims, were invalid.  The Commissioner counters, however, that the ALJ who determined Plaintiff's claim on September 2, 2020, held office on that date because of a ratification of delegated authority in July 2018, by former Acting Commissioner Nancy Berryhill, not because of a delegation of authority from former Commissioner Saul.  (ECF No. 18 at 5.)  As the Commissioner correctly notes, an Acting Commissioner is not subject to § 902(a)(3)'s removal provision thereby making that provision's constitutionality, or lack thereof, irrelevant.  *Butcher*, 2021 WL 6033683, at *6 (citing *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761, 1781 (2021) (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who

could be removed from the office at the President's discretion.")).

First, even accepting, as the Commissioner agrees, that the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. *Butcher,* 2021 WL 6033683, at *7.  As the Supreme Court noted in *Seila Law,* "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)).  Indeed, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)).  For that reason, in *Seila Law,* the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245.  The same is true here.  If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Butcher,* 2021 WL 6033683, at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec*., Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec*., 2021

9

WL 5356719, *8 (same)).

Additionally, even assuming the unconstitutionality of the removal provision in §
902(a)(3), that would not have automatically rendered former Commissioner Saul's appointment
invalid.  For this reason, it would not have automatically invalidated his actions, including
delegating authority to make benefits determinations or ratifying such delegations. *Butcher*, 2021
WL 6033683, at *7. In *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761 (2021), decided after *Seila
Law*, the Supreme Court considered a statute similar to § 902(a)(3) governing removal of
Directors of the Federal Housing Finance Agency ("FHFA").  The *Collins* majority held that
"[a]lthough the statute unconstitutionally limited the President's authority to *remove* the
confirmed Directors, there was no constitutional defect in the statutorily prescribed method of
appointment to that office.  As a result, there is no reason to regard any of the actions taken by the
FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled
precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director
of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at
2207–2211)).  Instead, to obtain reversal of an agency decision, a plaintiff must demonstrate
"compensable harm" flowing from the unconstitutional removal clause. *Collins, 141* S.Ct.. at
1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff
occurred due to the President's inability to remove a Director of the Federal Housing Finance
Agency except for cause).

Here, as the Commissioner contends, Plaintiff has made no showing of compensable
harm.  In fact, as courts considering this precise argument have begun to conclude, it is unlikely

that he could. *See Butcher,* 2021 WL 6033683, at *8; *Crawford,* 2021 WL 5917130, at *8 (reaching identical conclusion on similar facts). As recognized by Justice Kagan in *Collins*, the President's choice of SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Collins,* 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Nor is the Court persuaded by Plaintiff's argument that harm should be presumed under the circumstances here. Again, neither appointments nor actions taken by a properly appointed official are nullified by an unconstitutional removal provision. *Butcher,* 2021 WL 6033683, at *8.

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit.[2] Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, *de facto* officer, the rule of necessity, and other prudential considerations.

---

[2] Significantly, district courts in this Circuit, including, as noted, this one, have rejected the Constitutional claim raised by Plaintiff and consistently have concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See, e.g., Walker v. Comm'r of Soc. Sec.,* No. 4:20-CV-02506-CEH, 2022 WL 1266135, at *8 (N.D. Ohio Apr. 28, 2022); *Butcher,* 2021 WL 6033683; *Crawford,* 2021 WL 5917130*; Miley v. Comm'r of Soc. Sec.,* No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi.,* No. 20-518-HRW, 2021 WL 6052423(E.D. Ky. Dec. 21, 2021). Courts from other Circuits have held similarly. *See, e.g.,* Lisa Y. v.*Comm'r of Soc. Sec.,* ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D.Wash. Nov. 8, 2021); *Robinson v. Kijakazi,* No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3(W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at*18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM),2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The Undersigned agrees with the reasoning set forth in these other cases and reaches the same result.

**B.  Step 2**

Plaintiff also argues that the ALJ failed to classify his diagnosed conditions of chronic pain, radicular pain, hypertension, and mixed obsessional thoughts as either severe or non-severe medically determinable impairments, and thus, did not consider them at all when constructing the residual functional capacity.  Because of this determination, it leaves the decision unreviewable. (ECF No. 12 at 8-10).  Plaintiff's argument fails.

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments.  *See* 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Additionally, to be classified as "medically determinable" an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. "'If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.'" *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021) (quoting *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017). "At step two of the sequential analysis, Plaintiff has the burden of proving the existence of a medically determinable impairment." *Id.* (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (stating that the burden of proof lies with

12

[Plaintiff] at steps one through four of the process and only shifts to the ALJ at step five); *Smith v. Comm'r of Soc. Sec.*, No. 2:20-CV-5473, 2021 WL 3883061, at \*3 (S.D. Ohio Aug. 31, 2021) ("At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement.")).

Further, at step two of the sequential evaluation, a plaintiff must show that he suffers from a "severe impairment" in order to warrant a finding of disability. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). "Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation." *Hobbs v. Comm'r of Soc. Sec.*, No. 1:14-cv-121, 2015 WL 4247160, at \*5 (W.D. Mich. July 13, 2015) (citing *Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987)). "Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error." *Hobbs*, 2015 WL 4247160 at \*5 (citing *Maziarz,* 837 F.2d at 244). An ALJ can consider non-severe impairments in determining the RFC. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. 2008).

Here, the ALJ found that Plaintiff had severe impairments of major depressive order; agoraphobia with panic disorder and degenerative disc disease of the lumbar spine and facet

arthropathy.  (R. at 29.)  While the ALJ did not specifically classify Plaintiff's conditions of chronic pain, radicular pain, hypertension, and mixed obsessional thoughts, the ALJ nevertheless went on to consider Plaintiff's allegations of mental health and physical impairments in her discussion and at the remaining steps of the disability determination, including when assessing Plaintiff's functional limitations.  (R. at 31-40.)  Accordingly, the ALJ's failure to include these conditions as additional severe impairments at step two is legally irrelevant. *Anthony*, 266 F. App'x at 457; *Maziarz*, 837 F.2d at 244.

Even if the ALJ erred by failing to find these conditions medically determinable impairments, the error is harmless. The references to these conditions in the record highlighted by Plaintiff simply reflect either a diagnosis or a general notation of these conditions.  (*See* ECF No. 12 citing R. at 79, 97, 271, 322, 379.)  Plaintiff does not identify any limitations which might have arisen from any of these conditions, no matter how they were categorized, which should have been factored into the residual functional capacity analysis.  Moreover, assuming such diagnoses, the "mere diagnosis" of these conditions says nothing about their severity.  *Hill v. Kijakazi*, No. 2:20-CV-3983, 2021 WL 5027407, at *4 (S.D. Ohio Oct. 29, 2021), *report and recommendation adopted sub nom. Hill v. Comm'r of Soc. Sec.*, No. 2:20-CV-3983, 2021 WL 5323105 (S.D. Ohio Nov. 16, 2021) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)).  If the Court remanded the case and the ALJ resolved this issue in Plaintiff's favor by finding that these conditions were medically determinable but non-severe impairments,

> which is the best result Plaintiff could hope for were the case to be remanded—the key question would then be "whether the ALJ's decision not to find any limitations

14

> arising from the condition in question is supported by substantial evidence." *See Rose v. Comm'r of Soc. Sec.*, 2015 WL 6735313, at *5 (S.D. Ohio Nov. 4, 2015), *adopted and affirmed*, 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015). Where, as here, Plaintiff identifies no such limitations, and it is not apparent that any exist, the error made by the ALJ is harmless. It would certainly be better practice were an ALJ to say explicitly which impairments are found to be non-severe and which are found not to be medically determinable, but ordering a remand for clarification of that question when the ALJ's residual functional capacity finding would not change would be an exercise in futility.

*Rouse v. Comm'r of Soc. Sec.*, No. 2:15-cv-0223, 2017 WL 163384, at *4–5 (S.D. Ohio Jan. 17, 2017), *report and recommendation adopted*, No. 2:16-cv-0223, 2017 WL 1102684 (S.D. Ohio March 24, 2017) (finding that even though error had occurred it did not justify a remand).

It is therefore **RECOMMENDED** that Plaintiff's remaining contention of error be

**OVERRULED**.

### VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

### VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

May 3, 2022                          *s/ Elizabeth A. Preston Deavers*
                                     Elizabeth A. Preston Deavers
                                     United States Magistrate Judge